IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHN E. HENRICKS, III

                                            OPINION AND ORDER

           Plaintiff,

                                            17-cv-630-bbc
                                            13-cr-83-bbc

UNITED STATES OF AMERICA,

           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Petitioner John E. Henricks has moved for post conviction relief under 28 U.S.C. § 2255, contending that he was denied the effective assistance of counsel by each of the three lawyers who represented him after he was charged with mail fraud and aggravated identity theft. In addition, he contends that the government denied him due process and the Assistant United States Attorney who prosecuted him engaged in misconduct.

A review of petitioner's filings reveals that he cannot prevail on any of these claims. Although he has a litany of accusations about his counsel and the faults of the government, he has not shown any failure or impropriety by any one of the three lawyers who represented him at various times during the prosecution of the case. Neither has he shown that the government denied him due process or that the Assistant United States Attorney prosecuting the case denied him due process or otherwise acted improperly. Accordingly, his motion for post conviction relief will be denied.

1

BACKGROUND FACTS

In summarizing the facts of the case, I have relied primarily on the facts set out by the government in dkt. #5. Although petitioner submitted two lengthy briefs, one in support of his motion and another in response to the government's opposition brief, he did not cite any evidence to support the assertions in the briefs. As a consequence, I cannot give weight to his allegations of error, omissions and bad faith on the part of his counsel, the government and the officials involved in the investigation of the case.

A. Indictment

Petitioner was charged in 2013 with three counts of mail fraud, in violation of 18 U.S.C. § 1341(a) and one count of aggravated identity fraud, in violation of 18 U.S.C. § 1028A, rising out of petitioner's scheme to defraud insurance companies and others by filing fraudulent claims for damaged vehicles. Each of the three fraud claims carried penalties of 20 years; the identity fraud claim carried a two-year penalty to run consecutively to any sentence imposed on the fraud claims. The charges grew out of a scheme by petitioner and others to use a body shop and other enterprises he owned in and around Rhinelander, Wisconsin, to defraud insurance companies and others. Petitioner utilized several schemes, including the filing of fictional claims for damage to cars or recreational vehicles and directing his employees to damage insured property and file fraudulent claims.

A grand jury returned an indictment against petitioner in June 2013, charging him with three counts of mail fraud and one count of aggravated identity theft, but continued to investigate the case to consider, among other things, a possible charge of arson. Petitioner

retained a lawyer, James Marcus and took Marcus's advice to enter a plea of guilty on one count of mail fraud (count 3 of the indictment). The entry of this plea had two significant advantages: it stopped further investigation into petitioner's activities, which could have revealed additional criminal acts, and it avoided an additional two-year penalty that could have been imposed on petitioner under § 1028A(a)(1).

B. Plea Hearing

At the September 14, 2013 plea hearing, petitioner told the court, under oath, that he and his counsel had had enough time to discuss his plea and that he understood the consequences of pleading guilty and the way in which the sentencing guidelines would apply to his case. He admitted he had filed a false claim and that he understood that this was the conduct for which he was being charged. He also agreed that he had carried out the acts supporting the government's charge: he had called AIG Insurance Company to make a false claim for insurance, telling the company that he had damaged a "junior dragster" (a scaled down version of a full size drag racing car) owned by a Thomas Lloyd, and he did not tell the company that the story was fictional.

The government explained to petitioner that his efforts to make restitution and liquidate assets for this purpose would be a "significant factor" in determining whether he would be given credit toward his sentence for acceptance of responsibility. Dkt. #16, 13-cr-83, at 2. One of the conditions of obtaining this credit was to complete a detailed financial statement to be submitted to the United States Attorney during the week following entry of the plea. Id. Petitioner represented that he would submit such a statement. (In fact, he did not submit the statement

3

until December 6, 2013 and the statement he did submit was incomplete and imprecise.) After the government had summarized the plea agreement, petitioner stated on the record that his understanding of the agreement was the same as the government's, that no one had told him he would get a particular sentence and that he had no reason to think he would.

C. <u>After-Discovered Facts</u>

In the course of conducting the presentence investigation, the United States Probation Officer assigned to petitioner's case learned that petitioner and his family were planning to move from Rhinelander to Amherst Junction, Wisconsin, and set up a new body shop, to be known as AJ's Auto Body. The officer learned that the family had secured a house in the Amherst Junction area, that petitioner's wife had taken out a loan for the new body shop, that petitioner had lied to the bank president in Amherst Junction about the provenance of the tools that would be available for the new shop and that the family was in the process of selling petitioner's old body shop in Rhinelander, as well as the family's former home there.

The officer estimated that petitioner's fraud involved a $1.3 million intended loss, that petitioner had a positive net worth of $1,200,000 and that the recommended repayment was $1,199,145. In the presentence report, she wrote that petitioner had attempted to sell his home on the lake to his daughter for a price below the appraised value of the house and that petitioner had not disclosed assets he had listed in statements he provided to two banks in 2012; among these asserts were a Cadillac, a Ski Nautique and a trailer valued at $98,000.

## D. Sentencing

Some time after petitioner entered his plea, he stopped working with his former counsel, James Marcus, and retained another experienced criminal defense lawyer, Bruce Rosen, to represent him at sentencing. Rosen reviewed the presentence report and, prior to sentencing, objected successfully to two of the statements in the report: first, that petitioner should not be found to have occupied a position of trust as a "direct repair provider" and second, that the court should not consider an alleged arson as relevant conduct.

In advance of the sentencing, the government advised petitioner that it would not recommend a reduced sentence in light of petitioner's failure to provide accurate financial information, his sales of assets that could have been used for restitution and his non-disclosure of other assets, as well as the steps he took to increase his credit card debt by $82,000, and his commission of additional fraudulent acts.

At his January 2014 sentencing, petitioner told the court that he had read the presentence report and discussed it with his counsel. Rosen told the court he had reviewed the report with petitioner and, before that, had spent 40-50 hours in preparation for the sentencing. The government advised petitioner and the court that it would object to any reduction in petitioner's sentence for acceptance of responsibility, in light of his failure to disclose his assets or provide a timely financial statement and his effort to sell his house to his daughter at a reduced price. Rosen said nothing in his sentencing argument about the amount of the intended loss or about petitioner's net worth. He asked for a sentence below the guidelines. Petitioner was sentenced to a term of 121 months, the bottom of the sentencing range for his offense.

E. Post-Sentencing Discoveries

In October 2014, Peter Kern, a tool dealer, told an FBI officer that for about a year after meeting petitioner in Amherst Junction, he had obtained tools from Custom Collision, one of petitioner's former businesses. These tools were provided to Kern by petitioner, along with snowmobile parts and race clothing. In exchange, Kern provided petitioner $1,000 a week and tools that did not come from Custom Collision and could be used by AJ's Auto Body. Often, the price of the tools Kern bought was deducted from the bill he submitted to AJ's for his own purposes. Kern estimated that he provided $13,110.52 worth of tools to AJ's and turned over only $1,490.10 to petitioner or to AJ's. Dkt. #91.

Petitioner and his wife rented out their former home in Rhinelander for at least $7500, but turned over none of the proceeds to the government. They received income tax returns from both the state and the federal government and applied none of the funds to restitution. In addition, petitioner and his wife entered into a Proposed Marital Settlement Agreement, in which the two planned the allocation of marital assets so as to make it appear that they had divided their marital assets equally. On closer examination, it became clear that the assets had been divided with the goal of transferring the valuable assets to petitioner's wife, while keeping the less valuable and even worthless assets in petitioner's name.

F. Resentencing

On November 7, 2014, the government petitioned the court to resentence petitioner. A hearing was held and Howard Goldstein was appointed to represent petitioner, at government expense. The motion for resentencing was granted on the government's showing that petitioner

had wilfully disregarded the court's restitution order. He was sentenced to an increased sentence on April 16, 2015. By then, he had made payments of only $1,456.84 toward his restitution obligation. However, his wife, Catherine Henricks, had deposited $3,750 to his account at the Federal Prison Camp in Duluth, Minnesota, where he was serving his sentence.

Petitioner's sentence was upheld on appeal by the Court of Appeals for the Seventh Circuit, United States v. Henricks, 658 Fed. Appx. 813 (7th Cir. 2016), which agreed with this court that petitioner had willfully failed to make restitution immediately after he was sentenced and when he was incarcerated. He filed the present motion less than a year later.

OPINION

A. Ineffectiveness of Counsel

Petitioner contends that all three lawyers who represented him were constitutionally ineffective. Although petitioner did not raise this argument on direct appeal, the Supreme Court has held that a claim of this type is better resolved by way of a post conviction appeal under 28 U.S.C. § 2255 because the outcome usually rests on a record developed during the direct appeal and the district court is best suited to developing the facts necessary to determine the adequacy of representation at trial. Massaro v. United States, 538 U.S. 500, 504 (2003) (challenge to effectiveness of counsel can be subject of post conviction appeal in district court ).

Because petitioner was represented by three different lawyers, it is necessary to consider the work of each. As to James Marcus, retained by petitioner at the outset of the case, petitioner asserts that Marcus did not provide him adequate representation, without specifying what he thinks Marcus left undone or did improperly. The uncontested facts show that Marcus

7

engineered a prompt plea bargain, limited to one count, with no added charge under count 2, which carried a two-year consecutive sentence. At the plea hearing, the government summarized the plea agreement and petitioner stated on the record that his understanding of the agreement was the same as that of the government. He added that no one had told him he would get a particular sentence and that he had no reason to think he would.

Petitioner also suggests that Marcus failed to conduct an adequate investigation of the charges against him. However, a failure to investigate claim fails unless the petitioner can "prove that evidence uncovered during that investigation would have led counsel to change [his or] her recommendation to accept the plea offer." Warren v. Baenen, 712 F.3d 1090, 1093 (7th Cir. 2013). This requires the petitioner to provide "the court sufficiently precise information, that is, a complete showing as to what the investigation would have produced." Richardson v. United States, 379 F.3d 485, 488 (7th Cir. 2004). Plaintiff has pointed to no evidence that Marcus failed to investigate that would led a reasonable attorney to change his recommendation to petitioner to plead guilty.

Petitioner contends that Marcus promised him a lighter sentence than petitioner received, but he has alleged no facts to support his contention. Such a contention could not stand up in light of his statements to the court under oath that no one had promised him a particular sentence. Petitioner's statements at the plea hearing are presumed truthful. United States v. Standiford, 148 F.3d 864, 868 (7th Cir. 1998.)

Petitioner has not made any stronger case for the alleged ineffectiveness of his second counsel, Bruce Rosen, who represented him at sentencing. The record shows that Rosen persuaded the government not to argue to the court that petitioner's sentence should be

8

enhanced because of a suspected arson and not to add an abuse of trust enhancement to petitioner's sentence. Rosen's written arguments were comprehensive and well reasoned. That the court did not agree with Rosen that petitioner should have a below-guidelines sentence is not a failing attributable to Rosen, but a consequence of the record petitioner has compiled. Additionally, there is no merit to petitioner's argument that Rosen should have challenged the amount of restitution and the relevant conduct assigned to petitioner. The record shows that such a challenge would have been difficult and ultimately fruitless, not because of any alleged failure by Rosen to investigate but because of petitioner's fraudulent and deceptive conduct.

At petitioner's resentencing, held after evidence came to light that petitioner and his w had been engaged in hiding assets from the government, petitioner's third counsel, Howard Goldman, did what he could to mitigate the consequences of the Henrickses' efforts at concealment of assets. That he was not successful was not his fault. It was petitioner and his wife who hid assets from the government, sold assets twice over and engaged in the laundering of assets so that they could not be used to reimburse the victims of petitioner's fraud.

I conclude that petitioner has failed to show that he was denied the effective assistance of counsel at any stage of the criminal proceedings in this case.

## B. Prosecutorial Misconduct

Petitioner has alleged the he was the victim of prosecutorial misconduct but he cannot pursue this allegation at this time. As a general rule, a petitioner cannot raise a claim of prosecutorial misconduct under 28 U.S.C. § 2255 unless he can show both that he had cause for not raising the issue on direct appeal and that he will be subject to actual prejudice as a result of

9

the error. United States v. Frady, 456 U.S. 152, 167 (1982); Delatorre v. United States, 847 F.3d 837, 943 (7th Cir. 2017); McCoy v. United States, 815 F.3d 292, 295 (7th Cir. 2016).

Petitioner has not made either of the required showings. He has not provided any proof to support his contention of misconduct by the prosecutor and he has not identified any actual prejudice caused him by the supposed misconduct.

### C. Due Process

Petitioner contends that his sentence is unfair because of actions the government took against him during the prosecution of the case and his lawyers' failures to provide him effective representation. However, he has not identified any instances of unfairness attributable to the government or any instance of ineffectiveness by any one of the lawyers who represented him. Consequently, there is nothing to consider.

### D. Certficate of Appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Tennard v. Dretke, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Petitioner has not

made a substantial showing of a denial of a constitutional right so no certificate will issue.

Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case because the question is not a close one. Petitioner is free to seek a certificate of appealability from the court of appeals under Fed. R. App. P. 22, but that court will not consider his request unless he first files a notice of appeal in this court and pays the filing fee for the appeal or obtains leave to proceed in forma pauperis.

ORDER

IT IS ORDERED that the motion for post conviction relief under 28 U.S.C. § 2255 filed by petitioner John E. Henricks, III, is DENIED. Further, it is ordered that no certificate of appealability shall issue. Petitioner may seek a certificate from the court of appeals under Fed. R. App. P. 22.

Entered this 7th day of February, 2018.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge